UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSE ERIC RAMOS,
    Plaintiff,

v.

PUTNAM FAMILY COURT, et al.,
    Defendants.

No. 15-cv-1443 (VAB)

## INITIAL REVIEW ORDER

Jose Eric Ramos ("Plaintiff"), currently incarcerated at MacDougall-Walker Correctional Institute ("MacDougall-Walker"), brings this case *pro se* under 42 U.S.C. § 1983 ("Section 1983"), against the Putnam Family Court, Peter Barbone from Social Family Services at the Putnam Superior Court, Judge Michael E. Riley of the Connecticut Superior Court, Support Enforcement Agent Johara Craig at the Putnam Superior Court, and Connecticut Support Enforcement Services at the Putnam Superior Court (collectively, "Defendants"). ECF No. 1.

### I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint . . . [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

1

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement," does not meet the facial plausibility standard. *Id.* (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts have an obligation to interpret "a *pro se* complaint liberally," a *pro se* complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72-73 (2d Cir. 2009) ("Even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally . . . . We conclude, nonetheless, that the amended complaint fails to state [a claim] . . . even under liberal standards of review for *pro se* pleadings.").

## II.     FACTUAL ALLEGATIONS

Mr. Ramos's allegations arise from an underlying custody case in the Putnam Family Court. Compl. at 3, ECF No. 1. Mr. Ramos alleges that he was "denied equal rights, privileges [and] immunity of the law as well as equal protection of the law" in the custody case by all Defendants. *Id.* Mr. Ramos requests money damages, "to be reconnected [sic] with [his] children," to be able to resume contact with his children, and "visitation upon release." *Id.* at 6.

Mr. Ramos alleges that he filed for visitation rights and for joint custody of his children at the Putnam Superior Court, and that he was instructed to meet with Mr. Barbone, an employee of Family Services. Compl. at 5. Mr. Ramos alleges that he complied "with all stipulations nd instructions mandated by the court," and that Judge Riley than ruled that Mr. Ramos be granted "visitation and contact rights" as to his children. *Id.*

Mr. Ramos alleges that, throughout the course of his underlying family court case, the mother of his children "did not comply [with court orders] or appear for court on multiple occasions."  Compl. at 5.  Mr. Ramos alleges that, in response, he contacted and spoke with Mr. Barbone and Judge Riley multiple times and filed motions for contempt multiple times, but that they took no action.  *Id*.  Mr. Ramos further alleges that the mother then moved the children out of state without consulting him first, and that Mr. Barbone and Judge Riley took no action, even after Mr. Riley spoke to them and filed motions for contempt.  *Id*.  Mr. Ramos alleges that the law provided that no party to a custody case could remove the children from the state while the custody case was pending, and that if a party failed to appear before the court, the court should rule in favor of the opposing party.  *Id*. at 6.  He alleges that Mr. Barbone and Judge Riley denied him the protection of those laws and caused him harm.  *Id*.

Mr. Ramos further alleges that Child Support Enforcement Services has a mission statement "to provide for people who pay support."  Compl. at 6.  Mr. Ramos implies that because he paid child support, he is allegedly entitled to have a relationship with and see his children, and that he has been denied access to his children.  *Id*.  He claims that some of the Defendants, without specifying which of the Defendants, still "want [him] to pay [child] support even though they claim to not even know where or how my kids are."  *Id*.

Mr. Ramos also alleges that Defendants, without specifying which of the Defendants, issued a warrant for his arrest because he allegedly missed one court date in March of 2009, for which he had not received notice.  Compl. at 6.

### III.   DISCUSSION

All of the allegations in Mr. Ramos's Complaint arise from a Connecticut state court adjudication of his custody case, state court decisions as to child support, and the state's

3

enforcement of child support orders. As explained below, the Court concludes that all of Mr. Ramos's claims, against all Defendants, are barred by the *Rooker-Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Furthermore, certain of his claims would also be barred on other grounds, including by Eleventh Amendment sovereign immunity, by judicial immunity, and by the domestic relations exception.

### A. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries causes by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). Under the *Rooker-Feldman* doctrine, "federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court." *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004). "The *Rooker–Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment," because "within the federal system, only the Supreme Court may review a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998).

Specifically, the *Rooker-Feldman* doctrine "directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's

4

federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010).  Under the doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature." *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir. 1995)

Claims based on the actions of state officials, such as those affiliated with the department of child support enforcement or with social or family services, are generally claims that are "inextricably intertwined" with the family "court proceedings themselves," and therefore also barred by the *Rooker-Feldman* doctrine.  *Inkel v. Connecticut Dep't of Children & Families*, 421 F. Supp. 2d 513, 522 (D. Conn. 2006) (finding suit against Connecticut Department of Children and Families barred where plaintiff alleged that DCF officials gave false information that contributed to the family court's adverse determinations against them).  A plaintiff's allegations that he or she was denied "due process and equal protection" in the context of child support determinations and the enforcement thereof are therefore barred by the *Rooker-Feldman* doctrine.  *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 355-56 (E.D.N.Y. 2004) (holding that plaintiff's claims that she was not given notice of child support hearing or of the fact that her car could be seized for failure to pay child support are "inextricably intertwined with the state court's determinations and could have been raised in state court" and barred by *Rooker-Feldman*).

All of the allegations in Mr. Ramos's Complaint are "inextricably intertwined" with the underlying family court proceedings regarding the custody of his children and his child support obligations.  *See Inkel*, 421 F. Supp. 2d at 522.  Thus, under the *Rooker-Feldman* doctrine, the Court has no jurisdiction to review Mr. Ramos's claims.  *See, e.g.*, *Exxon Mobil*, 544 U.S. at 284.  The Court therefore dismisses Mr. Ramos's entire Complaint under 28 U.S.C. § 1915A(b).  As discussed below, the Court could also dismiss Mr. Ramos's Complaint on additional grounds.

### B.     Judicial Immunity

#### 1.     Judge Riley

As a judicial officer, Judge Riley is protected by judicial immunity. Judges are immune from suit, not just from the ultimate assessment of damages. *See Mirales v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity applies even if "the action [the judge] took was in error, was done maliciously, or was in excess of his authority." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)); *see also Heath v. Justices of Supreme Court*, 550 Fed.Appx. 64 (2d Cir. 2014) (summary order) ("Judges when acting in a judicial capacity, are entitled to absolute immunity" (internal quotation marks omitted)).

Judicial immunity is overcome in only two situations. A judge is not immune from suit for actions "not taken in [his] judicial capacity" or for actions that are judicial in nature but "taken in the complete absence of all jurisdiction." *See Mirales*, 502 U.S. at 11-12. "[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). The allegations against Judge Riley concern actions taken during the adjudication of a state custody case. Thus, neither exception applies. Judge Riley is immune from suit. All claims against Judge Riley must also, therefore, be dismissed under 28 U.S.C. § 1915A(b) on judicial immunity grounds.

#### 2.     Mr. Barbone and Ms. Craig

Judicial immunity also entitles state officials that make decisions as to child support payments and enforcement to "absolute quasi-judicial immunity" because, in that capacity, their "actions [are] the same as those of a judge," in that their decisions are "both judicial in nature and subject to review." *See Lomtevas v. Cardozo*, No. 05-CV-2779 (DLI)(LB), 2006 WL

229908, at *5 (E.D.N.Y. Jan. 31, 2006) (finding absolute judicial immunity applicable to New York support magistrate in New York family court despite plaintiff's contention that the support magistrate is "not a 'judge,' but only a 'government attorney'"). Such "[a]bsolute immunity" under "the doctrine of quasi-judicial immunity" applies where a "private actor's acts are integrally related to an ongoing judicial proceeding," and has been found to apply to "social workers and child welfare workers whose challenged actions involve the initiation and prosecution of child custody or dependency proceedings, guardians ad litem in child custody proceedings," for instance. *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526-27 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011) (citing *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir.2004)). According to Mr. Ramos's Complaint, Mr. Barbone works for Social Family Services at the Putnam Superior Court and Ms. Craig is a Support Enforcement Agent at the Putnam Superior Court. *See* Compl. at 1-3. Officials involved with making decisions as to child support payments and the enforcement of child support order are entitled to "absolute quasi-judicial immunity." *Lomtevas*, 2006 WL 229908 at *5. All claims against Mr. Barbone and Ms. Craig must also, therefore, be dismissed under 28 U.S.C. § 1915A(b) under quasi-judicial immunity grounds.

      **C.**    **Eleventh Amendment Sovereign Immunity**

To the extent that Mr. Ramos seeks money damages, his claims against the Putnam Family Court and Connecticut Support Enforcement Services at the Putnam Family Court are also barred by the Eleventh Amendment of the United States Constitution.

Under the Eleventh Amendment, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority

under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009) (internal quotation marks omitted). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks omitted). Section 1983 does not abrogate state sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979); *Sargent v. Emons*, 582 Fed.Appx. 51, 52 (2d Cir. 2014) (summary order) ("[I]t is well established that Congress did not abrogate state sovereign immunity in enacting 42 U.S.C. § 1983.").

The Putnam Family Court and the Support Enforcement Services division under the Putnam Family Court are, "unquestionably an 'arm of the State'" and therefore "entitled to Eleventh Amendment sovereign immunity." *Gollomp*, 568 F.3d at 368 (discussing New York State Unified Court System and finding that it was an arm of the state); *see also Zahl v. Kosovsky*, No. 08-CIV-8308 (LTS)(THK), 2011 WL 779784, at *7 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012) ("Therefore, Plaintiff's claims against [New York's Unified Court System] and [Office of Court Administration] . . . are barred by the Eleventh Amendment."). Mr. Ramos has provided no evidence suggesting that the State has waived immunity. Thus, any claims for damages against the Putnam Family Court and the Support Enforcement Services division of the Putnam Family Court must also be dismissed under 28 U.S.C. § 1915A(b) on Eleventh Amendment Grounds.

### D. Domestic Relations Exception

To the extent that Mr. Ramos's Complaint also requests that the Court "reconnect[]" him with his children and "visitation upon release," his claims are barred by the domestic relations exception. Compl. at 6. Under the "domestic relations exception," federal court have no "power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689,

703 (1992) ("We conclude, therefore, that the domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees."). "Though the domestic relations doctrine has been narrowly construed, covering only matrimonial actions, i.e., cases on the subjects of divorce, alimony, or the custody of children, a number of courts have recognized that federal courts should nevertheless abstain from exercising jurisdiction when issues are 'on the verge' of being matrimonial in nature if full and fair adjudication is available in state courts. Abstention is particularly urged for cases concerning visitation rights." *Lomtevas*, 2006 WL 229908 at *3 (internal quotation marks omitted) (citing *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir.1990)). Furthermore "[a]bstention under the domestic relations doctrine is also warranted when a plaintiff makes frivolous constitutional claims that are actually impermissible attempts to embroil the federal courts in matrimonial matters best left to the states." *Id.* (internal quotation marks omitted) (citing *Hernstadt v. Hernstadt*, 373 F.2d 316, 318 (2d Cir.1967)) (rejecting constitutional due process and equal protection claims arising from underlying custody case and noting that while plaintiff "frames his claims in constitutional terms, he is effectively asking this court to affirm or reverse a child custody decree and determine visitation rights").

Even to the extent that Mr. Ramos requests monetary relief, his claims may still be precluded by the domestic relations exception. *See Schottel v. Kutyba*, No. 06-1577-CV, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) ("Even if [plaintiff] had only requested monetary damages . . . federal jurisdiction would still be lacking. Although we recognize that the domestic relations exception is very narrow, a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." (internal quotation marks omitted)) (summary order).

All of Mr. Ramos's constitutional claims are essentially about the state court's disposition of his custody case, and are "impermissible attempts to embroil the federal courts in matrimonial matters best left to the states." *Lomtevas*, 2006 WL 229908 at *3. Thus, whether he requests visitation rights and the right to contact his children or whether he requests monetary damages, the Court will abstain from deciding his claims on domestic relations exception grounds. *See Ankenbrandt*, 504 U.S. at 703 (preventing federal courts from deciding divorce, alimony, and child custody issues); *Schottel*, 2009 WL 230106 at *1 (2d Cir. Feb. 2, 2009) (applying domestic relations exception to monetary damages claim). All of Mr. Ramos's claims can, therefore, be dismissed under U.S.C. § 1915A(b) on domestic relations exception grounds.

## IV. CONCLUSION

For the foregoing reasons, all of Mr. Ramos's claims against all of the Defendants are **DISMISSED** under 28 U.S.C. § 1915A(b). The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED at Bridgeport, Connecticut, this 18th day of July, 2017.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge